Alfonso de Cumpiano, Juez Ponente
*681 TEXTO COMPLETO DE LA SENTENCIA
El Estado Libre Asociado de Puerto Rico (E.L.A.) nos plantea en este recurso que erró el Tribunal de Primera Instancia al imponerle responsabilidad por haber incumplido su deber jurídico de proveer seguridad adecuada en un plantel escolar, lo que motivó una agresión de una estudiante a otra. Además, que erró al desestimar su demanda de tercero contra los padres de la menor agresora y al establecer la cuantía de los daños.
Examinemos la controversia a la luz de los hechos encontrados probados por el tribunal y del derecho aplicable.
I
Las menores Johannie Collazo Ortiz y Heidi Cruz Correa cursaban el noveno y octavo grado, respectivamente, en la escuela pública intermedia Las Américas, localizada en Puerto Nuevo. Su matrícula era de quinientos (500) a quinientos cincuenta (550) estudiantes. La escuela contaba con cuatro (4) conserjes a los que se les denominaba indistintamente oficiales de mantenimiento ó custodia, ya que realizaban tanto funciones de mantenimiento de la escuela como custodia de la propiedad y del orden entre los estudiantes. Había un (1) guardia de seguridad. No había-asignado un Cuerpo de Seguridad Escolar. En la escuela había un promedio semanal de cinco (5) peleas de puño.
Previo a los hechos de este caso, acaecidos el 30 de marzo de 1993, había mediado discusión entre las mencionadas menores en la escuela. Entre ambas hubo una discusión donde se profirieron palabras obscenas y se amenazaron con agredirse mutuamente. Todo ello, dentro de los predios del plantel escolar. De esta situación se había informado a las autoridades escolares, tanto por Johannie como por la madre de Heidi, la Sra. Rosa Correa Rodríguez.
El mencionado día, después que Johannie almorzó en el comedor escolar, se dirigió a un carrito de "hot dogs" localizado en la acera, a tres (3) o cuatro (4) pies de la verja y entrada principal'de la escuela a comprar una paleta. Mientras estaba en el lugar llegó Heidi, quien venía de almorzar en casa de una amiga y a quien le habían dicho que Johannie la estaba buscando para agredirla. De forma rápida Heidi increpó a Johannie, iniciándose una discusión entre ambas, profiriéndose palabras obscenas. El grupo que se encontraba a la entrada del plantel agitaba para que se iniciara una pelea entre ambas. Las estudiantes se enfrascaron en una pelea y Heidi, con un objeto cortante, mutiló a Johannie en diversas partes del cuerpo, concentrándose la mayor parte de las cortaduras en el área de la cara. También sufrió cortaduras en la muñeca derecha y al inicio del seno izquierdo. Una persona ajena al plantel detuvo la pelea y condujo a Johannie a la oficina del Director. Este se encontraba ausente del plantel. Allí fue atendida por un conserje y por la orientadora. Esta ordenó que se llamara a la mamá de Johannie, a los paramédicos y a la policía.
Ese día había faltado el único guardia de seguridad que tenía la escuela y no había guardia sustituto ni plan alterno de seguridad. El día de los hechos, uno de los conserjes estaba ausente. No había vigilancia de profesores en el momento de los hechos.
La Sra. María Ortiz Vega, a su nombre y en representación de su hija Johannie, presentó demanda contra el E.L.A. reclamándole compensación por los daños y perjuicios sufridos por ella y por su hija como producto de los hechos ocurridos en la escuela. El E.L.A. contestó la demanda negando responsabilidad y presentó demanda de tercero contra la Sra. Rosa A. Correa y el Sr. X, padres de Heidi Cruz Correa, y la sociedad de gananciales por ellos compuesta, reclamándole que indemnizaran directamente a la parte demandante o en la alternativa que reembolsaran al E.L.A. lo que éste en su día tuviera que pagar a los demandantes. Los terceros demandados contestaron la demanda negando responsabilidad.
*682 El Tribunal de Primera Instancia luego de escuchar la prueba, dictó la sentencia apelada, en la que resolvió que de haber desplegado la escuela su deber jurídico de tener seguridad adecuada en el plantel escolar y sus alrededores, se hubiera evitado el suceso ocurrido y que, por lo tanto, la referida omisión constituye la causa adecuada de los daños sufridos por Johannie. Condenó al E.L.A. al pago de sesentiocho mil dólares ($68,000.00) a Johannie en concepto de daños físicos y angustias mentales y a pagar la suma de siete mil dólares ($7,000.00) a la madre de Johannie en concepto de angustias mentales. Denegó la demanda contra tercero.
Contra esa sentencia se insta el presente recurso.
II
La controversia que presenta este caso debe examinarse a la luz de los principios generales de responsabilidad civil y de las normas particulares respecto a la protección y seguridad de los estudiantes que asisten a las escuelas públicas del país. Como principios generales, el artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141, y la jurisprudencia que lo interpreta, imponen responsabilidad de reparar daños causados al que por acción u omisión incurre en culpa o negligencia.
Los elementos de esa acción son: la realidad del daño sufrido, que la acción u omisión de otra persona sea la causa adecuada del daño y que dicho acto u omisión sea culposo o negligente. Para que se considere una omisión como negligente y, por lo tanto, exista una obligación de responder por los daños resultantes es menester que concurran los siguientes requisitos: primero, la existencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuridicidad, y segundo, que de haberse realizado el acto omitido se hubiera evitado el daño. Toro Aponte v. E.L.A. 142 D.P.R. _ (1997), 97 J.T.S. 18, pág. 627; Sociedad de Gananciales v. González Padín, 117 D.P.R. 94, 106 (1986).
El factor previsibilidad es un elemento esencial de la responsabilidad por culpa o negligencia, que se ha descrito por el Tribunal Supremo como: "El deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrojadas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase."Elba A.B. v. Universidad de Puerto Rico, 125 D.P.R. 294, 309 (1990).
Esos principios, al igual que normas específicas, rigen las actividades llevadas a cabo por las escuelas. En cuanto a éstas, se ha entendido que por su naturaleza tienen la obligación de ofrecer un grado de protección y seguridad independiente a la que puedan proveer las agencias de seguridad pública. En el caso de los planteles escolares existe un deber especial de cuidado, un deber de mantener medidas de razonable protección de sus estudiantes. Ese grado de protección o seguridad depende de la naturaleza de la Institución, de su localización, funcionamiento y la manera que ofrece sus servicios. El estándar de cuidado exigible en estas situaciones, si bien no es absoluto, es más riguroso que en el resto de los casos. Tormos Arroyo v. Departamento de Instrucción Pública, 140 D.P.R. _ (1996), 96 J.T.S. 34, pág. 806; Elba A.B. v. Universidad de Puerto Rico, supra, pág. 314; Estremera v. Inmobiliaria Rac, Inc., 109 D.P.R. 852, 856 (1980).
La situación particular en cuanto a la necesidad de proveer seguridad en las escuelas propició la aprobación de la Ley Núm. 26 de 5 de junio de 1985, 18 L.P.R.A. sees. 141 y ss., sobre el Cuerpo de Seguridad Escolar. Esta ordena al Secretario de Educación a crear un cuerpo de orden público para la protección de estudiantes, maestros, empleados y propiedad escolar en las escuelas y sus alrededores. Ese servicio será de manera prioritaria provisto a las escuelas con mayores problemas de vandalismo e incidencia criminal. Ese cuerpo podrá intervenir hasta una distancia de doscientos (200) metros desde el punto más cercano al lindero exterior del predio.
La aludida ley fue objeto de consideración por el Tribunal Supremo en el caso de Tormos Arroyo v. Departamento de Instrucción Pública, supra. Este trata de una demanda contra el E.L.A. por los daños y perjuicios sufridos por un estudiante y sus padres a causa de una golpiza que aquél recibiera propinada por un gmpo de jóvenes que merodeaban el plantel escolar. Los hechos ocurrieron a la hora de almuerzo en los alrededores de una escuela pública, cerca del portón de entrada a la misma. El *683 Tribunal encontró que el E.L.A. era responsable por los daños sufridos por los demandantes ya que era previsible el tipo de daño ocurrido y podía haber sido evitado con adecuada seguridad escolar. Luego de señalar que cuando los estudiantes salen a almorzar fuera del plantel escolar se impone un ‘ requisito de mayor vigilancia, el Tribunal concluyó que existe "un deber de previsibilidad a priori que hizo la Asamblea Legislativa consciente de la probabilidad de actos delictivos en planteles escolares y sus alrededores; resultado de una realidad reiterada y persistente. De lo contrario no se hubiera creado un cuerpo semi-policial con las amplias prerrogativas que les concede la ley, destinándose fondos públicos para su implantación." Págs. 809-810.
Procede, pues, que apliquemos las normas legales y jurisprudenciales antes esbozadas a los hechos que encontró probados el tribunal. Al tomar en cuenta las determinaciones de hechos del tribunal debemos atenernos a la reconocida norma sobre el ejercicio de nuestra función revisora, que limita nuestra intervención en cuanto a éstas. Recientemente, el Tribunal Supremo recalcó como norma fundamental que un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que hizo el juzgador de los hechos, salvo que haya mediado prejuicio o error manifiesto de su parte. "...[E]l juzgador de los hechos, que oyó y vio declarar a los testigos, y apreció su demeanor, es quien está indudablemente en la mejor posición para aquilatar la prueba testifical desfilada." López Vicil v. ITT Intermedia, Inc., 142 D.P.R. _ (1997), 97 J.T.S. 42, pág. 838.
Los hechos y circunstancias en que el foro de instancia determinó responsabilidad del Estado en este caso, son muy similares a los del caso Tormos Arroyo v. Departamento de Instrucción Pública, '' supra. En ambos casos los hechos ocurrieron en una escuela pública, a la hora de entrada de regreso j del almuerzo, cerca del portón de entrada pero fuera de los predios escolares, la agresión ocurrió - rápidamente y no había guardias de seguridad presentes al momento del suceso. Al igual que en Tormos Arroyo, en el caso de autos no estamos ante un hecho fortuito o un riesgo tan remoto que no pudiera ser previsto por una persona prudente, las autoridades escolares estaban acostumbradas a tener un promedio de cinco (5) peleas entre estudiantes semanalmente y más aún, estaban informadas de las riñas entre Johannie y Heidi. Ante esta situación las autoridades escolares debieron haber previsto, que el día de los hechos podría ocurrir otra pelea, por lo que era necesario que proveyeran seguridad en el plantel y sus alrededores más aún en la eventualidad de que se ausentara el único guardia de seguridad a cargo. La presencia en la escuela de seguridad adecuada, aparte de servir como factor disuasivo, probablemente hubiera cambiado la situación ya que al oír los gritos del grupo de estudiantes que agitaba para que comenzara la pelea hubo oportunidad de una pronta intervención que evitara o, al menos, minimizara los daños. Actuó, pues, correctamente el tribunal al concluir que incurrió en responsabilidad el E.L.A. por no proveer seguridad adecuada en el plantel escolar el día de hechos.
Respecto al señalamiento de error del tribunal al desestimar la demanda presentada por el E.L.A. contra los padres de Heidi, consideramos el señalamiento sin el beneficio de la comparecencia de los terceros demandados. A pesar de nuestros requerimientos, no presentó su posición ante este Tribunal.
El artículo 1803 del Código Civil, 31 L:P.R.A. see. 5142, impone responsabilidad a los padres por los actos y omisiones culposas o negligentes de sus hijos menores no emancipados que vivan en su compañía. Cesará su responsabilidad si prueban que emplearon toda la diligencia de un buen padre de familia para prevenir el daño.
Nos explica Brau del Toro que:
"La prueba de la conducta culposa o negligente del menor y de los daños causados por éste i establece una presunción controvertible de negligencia por parte del padre. Este tiene que controvertirla con prueba de que empleó toda la diligencia de un buen padre de familia para evitar el daño." Herminio M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, segunda edición, Publicaciones J.T.S. Inc., 1982, Vol. II, pág. 766.
Las determinaciones del tribunal sobre la responsabilidad del Estado en este caso, según las cuales de haber existido seguridad en el plantel con toda probabilidad se hubieran evitado o minimizado los daños, así como la prueba creída en cuanto a que la madre de Heidi fue diligente al hacer gestiones *684 ante las autoridades escolares sobre la situación problemática entre las menores, sustentan la denegatoria de la demanda de tercero.
Finalmente, el E.L.A. sostiene que las cuantías concedidas por el tribunal a Johannie de sesentiocho mil dólares ($68,000.00) en concepto de daños físicos y angustias mentales y siete mil dólares ($7,000.00) a su señora madre en concepto de angustias mentales son exageradamente altas.
Es norma conocida que los tribunales de instancia están en mejor posición que los tribunales apelativos para evaluar la prueba de daños, por su contacto directo con ésta. A eso se debe que la parte que solicita en apelación que se modifique la cuantía concedida debe demostrar las circunstancias que justifican la intervención del foro apelativo, el cual sólo intervendrá si la cuantía concedida es excesivamente alta o ridiculamente baja. Agosto Vázquez v. F. W. Woolworth, 142 D.P.R. _ (1997), 97 J.T.S. 56, pág. 591. Como no hay dos casos exactamente iguales y cada uno tiene unas circunstancias muy particulares, los precedentes no son de mucho valor en esta área. Toro Aponte v. E.L.A., supra, a la pág. 629.
Mediante observación directa, el tribunal describió de la siguiente manera las marcas o cicatrices en Johannie:

"1) Cicatrices finas a lo largo del tabique de la nariz, imperceptibles a simple vista, de pigmentación similar al resto del rostro.

2) Cicatriz en el pómulo izquierdo de dos (2) pulgadas de largo; la primera pulgada cambió de pigmentación y es más fina hasta convertirse en casi imperceptible.

3) Cicatriz de una pulgada en la muñeca de la mano derecha, finita, de pigmentación similar a la suya.

4) Cicatriz en el interior del lóbulo de la oreja izquierda, de una pulgada, de pigmentación similar al resto de la piel y otra cicatriz de media pulgada con iguales características que la anterior.

5)Cicatriz en el inicio del seno derecho en forma de circunferencia, de media pulgada de diámetro, con cambio en la pigmentación y textura diferente a su piel."

Así también, medió prueba sobre el estado emocional de Johannie y el impacto en su estado anímico de los daños físicos sufridos. La juez de instancia tuvo la oportunidad de apreciar directamente la intensidad y extensión de los daños físicos y su efecto en el comportamiento de Johannie. Pudo apreciar el demeanor de ésta y de la madre mientras declaraban sobre sus sufrimientos.
Los precedentes que cita el E.L.A. para establecer que la cuantía concedida por el tribunal a quo fue excesiva son casos de hace casi quince (15) años y las cuantías no han sido traídas a valor presente, aparte de que no presentan situaciones similares a las de autos. El hecho de que la operación de cirugía plástica que corregiría las cicatrices de Johannie tenga un valor de ocho mil dólares ($8,000.00) no es suficiente para concluir que la suma concedida sea excesiva. Recordemos que según la prueba, Johannie ha estado ya por varios años con su rostro marcado durante su adolescencia, que tuvo que soportar las burlas de sus compañeros y que el daño emocional persistirá aún después de corregido el físico. No estamos en condiciones de sustituir la cuantía concedida por una apreciación nuestra, ausente los elementos que lo justificarían.
m
Por los fundamentos anteriormente expuestos procede que se confirme la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*685 ESCOLIOS 98 DTA 9
1. También mediante ley se provee protección a los estudiantes, de comerciantes de drogas que merodean en los airededores de la escuela. Ley N~m. 40 de 5 dejunio de 1986, segiin enmendada, 24 L.P.R.A. sec. 241 la.
2. La parte apelante alega que el tribunal erró al hacer la determinación, pero Ia misma encuentra apoyo en Ia exposición narrativa. En sus páginas siete (7) y ocho (8) senala que Johannie declaró que habIa informado antes del incidente a su maestra de salon hogar, Elsie y a "Lilliam", a orientadora, que Heidi y otros estudiantes estaban molestándola. AsI tambi~n, en las páginas trece (13) y catorce (14) surge que Ia Sra. Rosa Correa, madre de Heidi, dlaró que antes del dIa de la pelea habIa informado a la maestra de salOn hogar de su hija y al trabajador social de la escuela sobre Ia tensa situación.sdfaf